1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-Filed 4/10/09**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| VICTORIA C. FLOWER, et al.,<br><br>                   Plaintiffs,<br><br>    v.<br><br>WACHOVIA MORTGAGE FSB, et al.,<br><br>                  Defendants. | Case Number C 09-343 JF (HRL)<br><br>**ORDER[1] GRANTING MOTIONS TO REMAND AND FOR JUDGMENT ON THE PLEADINGS, DENYING MOTION FOR LEAVE TO AMEND, AND DENYING CROSS-MOTION TO REMAND**<br><br>Re: docket nos. 8, 13 & 16 |

This action is the product of two separate actions removed from the Monterey Superior Court. In the first action, filed December 22, 2008, Plaintiffs Richard and Josephine Tamone ("the Tamones") and their daughter Victoria Flower ("Flower") (collectively, "Plaintiffs") allege that Defendant Wachovia Mortgage FSB ("Wachovia") violated the federal Fair Housing Act ("FHA") and several provisions of California law by foreclosing upon Flower's home and refusing to sell it to the Tamones following a trustee sale ("the civil rights action"). On January 26, 2009, Wachovia removed the action to this Court on the basis of diversity of citizenship and the existence of a federal question. On the same day, Wachovia filed an unlawful detainer action

---

[1] This disposition is not designated for publication in the official reports.

1   against Flower in the Monterey Superior Court in light of Flower's refusal to leave the subject

2   property.  On February 3, 2009, Flower and the Tamones removed that action to this Court on the

3   basis of its relationship to the earlier-filed action.

4       Wachovia moves to dismiss[2] the civil rights action and to remand the unlawful detainer

5   action, with an award of costs and attorneys' fees.  Plaintiffs move to remand the civil rights

6   action or, should this Court retain that action, for leave to amend their complaint. For the reasons

7   set forth below, Plaintiffs' motion to remand will be denied, the civil rights action will be

8   dismissed, the motion for leave to amend will be denied, and Wachovia's motion to remand the

9   unlawful detainer action will be granted.  Wachovia's request for costs and fees will be denied.

10                          **I. BACKGROUND**

11      In 2008, Flower defaulted on a mortgage secured by her home and held by Wachovia.

12  Wachovia foreclosed upon the property and reacquired it at a trustee sale at which it was the sole

13  bidder.  The Tamones apparently had the opportunity to purchase the home at the trustee sale, but

14  they did not do so.  Instead, they contacted Wachovia after the trustee sale and offered to

15  purchase the home for approximately half of the loan value outstanding at the time of foreclosure

16  and approximately $21,000 less than Wachovia had paid at the foreclosure sale.[3]  When

17  Wachovia refused the offer, Plaintiffs filed the instant civil rights action, arguing that by refusing

18  to sell Flower's recently foreclosed home to her parents, Wachovia had committed unlawful

19  discrimination.  Wachovia then filed its unlawful detainer action to remove Flower from the

20  foreclosed property.

21

22

23

24      [2] Because the pleadings have closed, Wachovia properly styles its motion as one for

25  judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For convenience,
    the Court will refer to the motion as a motion to dismiss, as the two are "functionally identical."

26  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

27      [3] Wachovia also claims that the offer price was "considerably less than the appraised

28  value."  Wachovia Mot. to Dismiss, at 3:14.  Plaintiffs have filed evidentiary objections to this
    assertion, but the instant disposition does not depend on the resolution of this dispute.

                                    2

1  **II. LEGAL STANDARDS**

2  **A.    Removal and Remand**

3          Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action to federal court if the

4  plaintiff initially could have filed the action in federal court.  *See Ethridge v. Harbor House*

5  *Restaurant*, 861 F.2d 1389, 1393 (9th Cir. 1988).  A party may file an action in federal court if

6  there is diversity of citizenship among the parties or if the action raises a substantial federal

7  question.  *Ethridge*, 861 F.2d at 1393.  The party invoking the removal statute bears the burden

8  of establishing federal jurisdiction.  *Id*.  The removal statute is strictly construed against removal.

9  *Id*.  An action therefore should be remanded if there is any doubt as to the existence of federal

10 jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

11 **B.    Dismissal pursuant to Rule 12(b)(6)**

12         A complaint may be dismissed for failure to state a claim upon which relief may be

13 granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under

14 a cognizable legal theory.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007); *Conley v.*

15 *Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-

16 34 (9th Cir. 1984).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as

17 true and the court construes the complaint in the light most favorable to the plaintiff.  The court's

18 review is limited to the face of the complaint and matters judicially noticeable.  *See* Fed. R. Evid.

19 201; *Jenkins v. McKeithen*, 395 U.S. 441, 421 (1969); *MGIC Indemnity Corp. v. Weisman*, 803

20 F.2d 500, 504 (9th Cir. 1986).  Leave to amend must be granted unless it is absolutely clear that

21 deficiencies in the complaint cannot be cured by amendment.  *See, e.g.*, *Dumas v. Kipp*, 90 F.3d

22 386, 393 (9th Cir. 1996).

23 **III. DISCUSSION**

24 **A.    Motion to remand civil rights action**

25         Plaintiffs move to remand their action against Wachovia for alleged housing and other

26 discrimination.  Wachovia opposes the motion on the ground that both diversity and federal

27 question jurisdiction exist.  With respect to diversity, it is undisputed that Plaintiffs are citizens

28 of California.  While the determination of a corporation's citizenship for diversity purposes

3

1    ordinarily requires the application of several tests designed to measure the level of the entity's

2    business activity in a particular state, Congress has simplified the inquiry with respect to

3    federally chartered savings banks: "In determining whether a Federal court has diversity

4    jurisdiction over a case in which a Federal savings association is a party, the Federal savings

5    association shall be considered to be a citizen *only* of the State in which such savings association

6    has its home office." 12 U.S.C. § 1464(x) (emphasis added).  Wachovia Mortgage FSB has its

7    home office in Nevada and therefore is solely a citizen of Nevada for diversity purposes.

8            Plaintiffs argue that the recent acquisition of Wachovia Corporation (the owner of

9    Wachovia Mortgage FSB) by Wells Fargo & Company ("Wells Fargo") makes Wells Fargo the

10   defendant "for all practical purposes."  Although a merger of two companies may alter their

11   citizenship for diversity purposes, *Bell v. American General Finance, Inc.*, 267 F. Supp. 2d 582,

12   585 (S.D. Miss. 2003), and although a division of a corporation similarly will share that

13   corporation's citizenship, *Schwartz v. Elec. Data Sys.*, 913 F.2d 279, 284 (6th Cir. 1990), it is

14   well settled that "[a] subsidiary's citizenship remains separate from its parent corporation for the

15   purpose of diversity jurisdiction."  *Glazier & Associates, P.C. v. Teleport, Inc.*, No.

16   Civ.01-1080-ST, 2001 WL 34041792, at *2 (D. Or Sept. 13, 2001) (citing *Nauru Phosphate*

17   *Royalties, Inc. v Drago Daic Interests, Inc.*, 138 F3d 160, 164 (5th Cir. 1998) and *USI Props.*

18   *Corp. v. MD Constr. Co.*, 860 F.2d 1, 7 (1st Cir. 1988)); *see also Breitman v. May Co.*

19   *California*, 37 F.3d 562, 564 (9th Cir. 1994) (recognizing the "general rule" that a subsidiary's

20   citizenship is determined without reference to that of its parent corporation, but declining to

21   extend the rule to a mere "division" of a corporation).

22           Here, Plaintiffs state that Wachovia "is a wholly owned *subsidiary* of Wells Fargo Bank

23   NA, a California-incorporated company with its world headquarters in San Francisco, CA," and

24   public records subject to judicial notice confirm that Wachovia FSB is a subsidiary of Wachovia

25   Corporation, which itself is a separate entity held by Wells Fargo & Company.  *See Office of*

26   *Thrift Supervision*, Institutional Records Site, http://www.ots.treas.gov/?p=InstitutionSearch-

27   &iid=12642; *see also* Exs. A & B to Pls.' Opp to Remand.  Because Defendant Wachovia FSB

28   was *acquired* by Wells Fargo and is operated not as a division but as a subsidiary, the citizenship

4

1  of Wells Fargo is irrelevant for diversity purposes.[4]  Accordingly, complete diversity exists and

2  Plaintiffs' motion to remand will be denied.[5]

3  **B.    Motion to dismiss civil rights action**

4          At the heart of this case is the now-all-too-common tragedy of foreclosure.  In an attempt

5  to avoid the personal suffering that their daughter likely would experience upon foreclosure and

6  eviction from her home, Plaintiff Flower's parents, the Tamones, sought to purchase the home.

7  When Wachovia refused their offer, they filed this action alleging that Wachovia's refusal to sell

8  them the home in a "short sale," despite its alleged willingness to entertain such sales with

9  persons other than the family members of defaulting borrowers, constituted unlawful

10 discrimination.  Specifically, Plaintiffs have alleged that Wachovia's conduct violated California

11 Civil Code §§ 51 *et seq.* (Unruh Act), California Government Code §§ 12900 *et seq.* (Fair

12 Employment and Housing Act), California Business and Professions Code §§ 17200 (Unfair

13 Competition Laws), and 42 U.S.C. § 3601 *et seq.* (the FHA).  Based on these alleged violations,

14 Plaintiffs seek to quiet title to the subject property in themselves.  While the Court is sensitive to

15 the humanitarian concerns raised by the facts of this case, a review of the record and the

16 applicable law compels the conclusion as a matter of law that Wachovia's refusal to sell Flower's

17 foreclosed home to the Tamones does not entitle Plaintiffs to relief.

18         **1.    Unruh Act allegations**

19         The Unruh Act prohibits discrimination by business establishments based on "sex, race,

20 color, religion, ancestry, national origin, disability, medical condition, marital status or sexual

21

22         [4] The joinder of Wells Fargo as a defendant also would not change the result because the
23 fraudulent joinder doctrine prevents a plaintiff from destroying diversity by suing a non-diverse
   parent company that did not play a legally cognizable role in the alleged wrongdoing.  *See, e.g.,*
24 *Allied Programs Corp. v, Puritan Ins. Co.*, 592 F. Supp. 1274, 1276-77 (S.D.N.Y. 1984).  In the
   instant case, Plaintiffs sued Wachovia before Wells Fargo had acquired Wachovia Mortgage
25 FSB's parent company.  Thus, Plaintiffs could not credibly claim that Wells Fargo was involved
   sufficiently in the issues raised by this action to justify removal on the basis of its putative
26 presence in the suit.

27         [5] The Court therefore need not consider whether federal question jurisdiction
28 exists–although the pleading of a claim under the federal Fair Housing Act indicates that it
   almost certainly does.

5

1   orientation." Cal. Civ. Code § 51(b).  While this list is not exclusive, expansion of the classes

2   afforded protection under the act is limited in multiple respects.  First, the statute states expressly

3   that it "shall not be construed to confer any right or privilege on a person that is conditioned or

4   limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry,

5   national origin, disability, medical condition, marital status or sexual orientation."  Cal. Civ.

6   Code. § 51(c); *see also Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1160-61 (1991)

7   (noting that "the particular importance of the[] categories in interpreting the scope of the Act is

8   underscored by their repetition in the proviso to section 51 that no right or privilege is conferred

9   'which is applicable alike to persons' within the specified categories").  Second, the legislature

10  repeatedly has focused on the list of protected classes in revising the Act from time to time, and

11  this "continued emphasis on the specified categories of discrimination in the Act (without adding

12  [general] words [such as] "arbitrary," "unreasonable," or similar language to its provisions)

13  reflects the continued importance of those categories in its proper interpretation." *Harris*, 52

14  Cal. 3d at 1159.  Any expansion of these categories therefore must be evaluated strictly in light

15  of the Act's underlying purposes, and courts correspondingly have limited the reach of the Act to

16  cases involving invasive discrimination based on personal, non-economic characteristics. *See*

17  *Harris*, 52 Cal. 3d at 1161; *Roth v. Rhodes*, 25 Cal. App. 4th 530 (1994); *see also King v. Hofer*,

18  42 Cal. 4th 678 (1996).

19          While they do not so allege in their complaint, Plaintiffs claim in their opposition papers

20  that Wachovia discriminated against them on the basis of three forbidden classifications: familial

21  status, ancestry, and race.  With respect to "familial status," the California legislature has

22  explained that the term covers

23          one or more individuals under 18 years of age who reside with a parent, another
            person with care and legal custody of that individual, a person who has been given
24          care and custody of that individual by a state or local governmental agency that is
            responsible for the welfare of children, or the designee of that parent or other
25          person with legal custody of any individual under 18 years of age by written
            consent of the parent or designated custodian. The protections afforded by this
26          part against discrimination on the basis of familial status also apply to any
            individual who is pregnant , who is in the process of securing legal custody of any
27          individual under 18 years of age, or who is in the process of being given care and
            custody of any individual under 18 years of age by a state or local governmental
28          agency responsible for the welfare of children.

                                                6

1   Cal. Govt. Code § 12955.2; *cf. Vargas v. Monitor Mgmt. Co.*, No. B186087, 2006 WL 2615315,

2   at *6 (Cal. App. 2d Dist. Sept. 13, 2006) ("[T]he second amended complaint pleaded that the

3   plaintiffs are parents of two of minor children, who resided with them, satisfying the 'familial

4   status' element under the Unruh Act."). While the Tamones are Flower's parents, Flower is not a

5   minor, and thus this classification does not apply.

6        Plaintiffs next suggest that they are covered by the "ancestry" classification, but that

7   classification does not bear any construction that would assist them. Courts uniformly have held

8   that "ancestry" refers to the national origin of an individual or his or her ancestors. *See, e.g.*,

9   *Botello v. County of Alameda Social Servs. Agency*, No. C 94-1644 FMS, 1995 WL 779115, at

10  *10 (N.D. Cal. Dec. 11, 1995) ("'[A]ncestry' is essentially synonymous with 'national origin');

11  *cf. Vargas v. Hampson*, 57 Cal. 2d 479 (1962) (finding allegation that defendant refused to sell

12  property to persons of "Mexican" ancestry cognizable under the Unruh Act). Moreover, the

13  common meaning of "ancestry" refers to predecessors. *Tidewater Oil Co. v. Workers' Comp.*

14  *Appeals Bd.*, 67 Cal. App. 3d 950, 958-59 (1977). The Tamones and Flower do not bear an

15  ancestral relationship to one another.

16       Plaintiffs' suggestion that they are entitled to protection on the basis of race is puzzling.

17  "Race" refers to an ethnic line of people, not to the configuration of a particular family unit. *See*

18  *Sandhu v. Lockhead Missiles & Space Co.*, 26 Cal. App. 4th 846, 851-858 (1994) (observing that

19  race, ancestry, and national origin are intimately related); *cf. Jackson v, Superior Court*, 30 Cal.

20  App. 4th 936, 941 (1994) (finding that allegation of bank's discrimination against plaintiff

21  because he was African American was sufficient to allege "race" discrimination under the Unruh

22  Act). Plaintiffs' allegations have nothing to do with race–indeed, Plaintiffs nowhere have

23  identified their race.

24       Plaintiffs also fail to plead facts warranting an expansion of the Unruh Act to protect the

25  parents of defaulting borrowers–the only putative class that can be inferred from the pleadings.

26  As already noted, courts may expand the Act's protections *only* as against discrimination based

27  on personal characteristics. *Harris*, 52 Cal. 3d at 1161. Moreover, where there is a "legitimate

28  business interest" justifying the allegedly "arbitrary" or "discriminatory" conduct, such expansion

7

1   is precluded. *Harris*, 52 Cal. 3d at 1162. Thus, "the Unruh Act d[oes] not prohibit businesses

2   from making economic distinctions among customers so long as the criteria used were not based

3   on personal characteristics and could conceivably be met by any customer." *Harris*, 52 Cal. 3d at

4   1163 (citing *Koire v. Metro Car Wash*, 40 Cal. 3d 24 (1985)); *see also Frantz v. Blackwell*, 189

5   Cal. App. 3d 91 (1987) (holding that refusal to sell house to speculator in potential competition

6   with defendant did not violate the Unruh Act).

7       With respect to whether Wachovia's alleged policy of refusing to sell foreclosed

8   properties to family members of the defaulting borrower turns on "personal characteristics,"

9   neither Plaintiffs' pleadings nor their arguments offer any basis for the inference that such a

10  policy rests on anything other than economic considerations. In effect, Wachovia declined to sell

11  a foreclosed property to relatives of a party that had cost it substantial sums of money by

12  defaulting on a mortgage secured by that property. Plaintiffs have not identified a single non-

13  economic motivation for Wachovia's alleged conduct. Furthermore, the Tamones' claim is

14  undermined by the fact that they could have purchased Flower's home at the trustee sale at which

15  Wachovia acquired it, but declined to do so.

16      Conversely, Wachovia has articulated virtually self-evident business justifications for the

17  alleged policy, namely that such a policy is necessary to prevent fraud and to avoid claims by

18  other lien holders. With respect to the prevention of fraud, Wachovia argues that family

19  members of a defaulting borrower are more likely to engage in "straw man" transactions

20  designed to pass the costs of default to the lender while retaining the property. The very posture

21  of this action supports Wachovia's position. Here, the Tamones admit that they intended to

22  purchase the home from Wachovia in order to give it to Flower. Had Wachovia agreed to sell the

23  home to the Tamones at the substantially discounted price they suggested, and had the Tamones

24  then returned the home to Flower, the practical result would have been a reduction of the

25  principal balance on Flower's loan in the amount of the difference between the loan value and

26  the proposed sale price–here over $200,000. With respect to avoiding claims by other lien

27  holders, Wachovia explains that in cases where secondary creditors have a lien on the same

28  property, Wachovia may not permit the borrower effectively to eliminate all liens through

8

1   foreclosure and then regain the property through a family member, since doing so would

2   circumvent the priority-based distribution of proceeds to secondary lien holders, opening

3   Wachovia to lawsuits by those holders.  Plaintiffs do not dispute this point, and therefore

4   concede it.  *See New Grade Intern., Inc. v. Scott Technologies*, No. C03-2628RSM, 2004 WL

5   5571416, at *5 (W.D. Wash. Nov. 30, 2004); *Estes v. Beta Steel Corp.*, No. 2:06-cv-221, 2006

6   WL 3542731, at *4 (N.D. Ind. Nov. 7, 2006).

7         Setting aside the Tamones' unexplained failure to attempt to purchase Flower's home at

8   the trustee sale, Wachovia's subsequent refusal to sell them the home is a legitimate means "to

9   obtain . . . the benefit of its bargain with the consumer." *Harris*, 52 Cal. 3d at 1163.  Courts

10  specifically have recognized that "many . . . businesses, including lending institutions . . . , are in

11  the position of extending money . . . in exchange for promises to pay or repay in the future. *They*

12  *use . . . financial criteria to make risk-oriented decisions regarding what customers to deal with*

13  *and on what terms*." *Harris*, 52 Cal. 3d at 1167 (emphasis added).  As long as the defendant's

14  practice is reasonably related to a legitimate business purpose, courts uniformly "decline to

15  second-guess [the defendant's] business judgment." *Desert Healthcare Dist. v. PacifiCare FHP,*

16  *Inc.*, 94 Cal. App. 4th 781, 794 (2001).

17        Finally, it is well-recognized that the question of whether a legitimate business interest

18  exists and whether a challenged practice bears a reasonable relationship to that interest may be

19  resolved as a matter of law.  *See Harris*, 52 Cal. 3d at 1165 ("Unruh Act issues have often been

20  decided as questions of law on demurrer or summary judgment when the policy or practice of a

21  business establishment is valid on its face because it bears a reasonable relation to commercial

22  objectives appropriate to an enterprise serving the public.").  The alternative "would require that

23  each business defend its policies as 'reasonable' in a trial on the merits . . . [,] [a course which]

24  would generate expense and uncertainty on a massive scale with little or no demonstrable benefit

25  to the antidiscrimination policy of the Unruh Act." *Id.* at 1167.  Because the "legitimate business

26  interest is obvious here," *Roth v. Rhodes*, 25 Cal. App. 4th 530, 539 (1994), Plaintiffs' Unruh Act

27  claims will be dismissed.

28

### 2.    California and federal fair housing claims

Plaintiff alleges that Wachovia's conduct violated the California Fair Employment and Housing Act ("FEHA") and the federal Fair Housing Act ("FHA").  By its express terms, the FEHA does not apply to conduct "based upon factors other than race, color, religion, sex, marital status, national origin, ancestry, familial status, disability, or other basis prohibited by the Unruh Civil Rights Act."  Cal. Govt. Code § 12995(a)(3).  As explained above, Plaintiffs do not fall within any of the statutory classifications, and may not otherwise invoke the protections of the Unruh Act.  Accordingly, Plaintiffs' FEHA claims are foreclosed as a matter of law.  With respect to Plaintiffs' federal claims, the FEHA generally "provides a greater level of protection and rights for persons aggrieved by discriminatory housing practices than does the FHA." *Housing Rights Center v. Sterling*, 404 F. Supp. 2d 1179, 1194 (C.D. Cal. 2004); *see also Auburn Woods I Homeowners Ass'n v. Fair Employment and Housing Com'n*, 121 Cal. App. 4th 1578, 1591 (2004) ("[T]he FHA provides a minimum level of protection that FEHA may exceed.").  Plaintiffs offer no basis–statutory or otherwise–on which to infer that the FHA affords greater protection than California law against the conduct alleged in this case.  Accordingly, Plaintiffs' state and federal housing discrimination claims will be dismissed.

### 3.    UCL claims

To plead a valid claim under the UCL, the allegedly wrongful conduct "must be tethered to specific constitutional, statutory, or regulatory provisions."  *See Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002); *see also Bernardo v. Planned Parenthood Federation of America*, 115 Cal. 4th 332, 353 (2004); *Schnall v. Hertz Corp.*, 78 Cal. 4th 1144, 1166-67 (2000) ("[A]ny claims of unfairness under the UCL should be defined in connection with a legislatively declared policy").  Plaintiffs have identified no legislative, judicial, or other statements of policy that could serve as a basis for their claims.  Rather, their claims actually would "impinge on a separate state policy favoring 'freedom of contract by the parties to commercial real property [transactions].'"  *Gregory*, 104 Cal. App. 4th at 855 (citing Cal. Civ. Code § 1995.270(a)(1)).  To grant Plaintiffs the relief they seek would result in a "judicially supervised marketing of the property [that] would, at best, put the court in the untenable position of making or approving

10

1    commercial decisions without clear guidelines and, at worst, . . . involve a level of dominion over

2    the property raising constitutional issues." *Id*. (citing United States Constitution, Art. I, sec. 10

3    (impairment of contracts clause), Fifth Amendment (takings clause), and Fourteenth Amendment

4    (due process clause)).  Accordingly, Plaintiffs' UCL claim will be dismissed.

5        **4.    Disposition**

6        Because Plaintiffs have failed to plead any viable claim, their complaint will be

7    dismissed.  In assessing whether Plaintiffs should be given leave to amend, the Court ordinarily

8    must consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated

9    failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,]

10   and futility of the proposed amendment." *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052

11   (9th Cir. 2001) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.

12   1989)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (providing factors constraining

13   district court's discretion to deny leave to amend).  These factors, however, are "not given equal

14   weight . . . , [and] futility of amendment can, by itself, justify the denial of . . . leave to amend."

15   *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  While there is no evidence that Plaintiffs

16   have been guilty of undue delay, bad faith, or dilatory motive, each of their claims is in

17   fundamental conflict with the objectives and intended scope of the relevant statutes.

18   Accordingly, leave to amend these claims will be denied on the basis that amendment would be

19   futile.

20       Plaintiffs also have filed a motion for leave to add allegations of fraud to their complaint.

21   The allegations pertain exclusively to an alleged offer by Wachovia to sell Plaintiffs the

22   foreclosed property–an offer made, as Plaintiffs concede, "in response to the complaint."

23   Wachovia argues that this offer was a "settlement" offer that is absolutely privileged under

24   California law.  *See* Cal. Civ. Code § 47(b); *see also Torres v. Unum Life Ins. Co. of Am.*, No. C

25   08-1940 MHP, 2009 WL 69358, at *11-13 (N.D. Cal. Jan. 9, 2009) (granting motion for

26   judgment on the pleadings as to claims arising out of settlement discussions because such

27   negotiations are immune "from tort liability for all torts except malicious prosecution").

28       Section 47(b) provides that "[a] privileged publication or broadcast is one made . . . in

11

1   any (1) legislative or (2) judicial proceeding . . . . " Cal. Civ. Code § 47(b).  Although originally

2   restricted to defamation actions, the privilege now is applied broadly and immunizes defendants

3   from tort liability for all torts except malicious prosecution.  *See Silberg v. Anderson*, 50 Cal. 3d

4   205, 211-12 (1990).  The privilege applies to "any communication (1) made in judicial or

5   quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve

6   the objects of the litigation; and (4) that have some connection or logical relation to the action."

7   *Silberg*, 50 Cal. 3d at 212.  The privilege also applies to "any publication required or permitted

8   by law in the course of a judicial proceeding to achieve the objects of the litigation, even though

9   the publication is made outside the courtroom and no function of the court or its officers is

10  involved."  *Id.*  As such, the privilege covers settlement negotiations.  *See, e.g.*, *Home Ins. Co. v.*

11  *Zurich Ins. Co.*, 96 Cal. App. 4th 17, 23 (2002) (finding that defendant's misrepresentation of

12  terms of insurance policy to induce settlement was absolutely privileged and not actionable in

13  derivative suit alleging intentional and negligent misrepresentation); *Rosenthal v. Irell &*

14  *Manella*, 135 Cal. App. 3d 121 (1982) (holding that plaintiff could not sustain action for

15  intentional infliction of emotional distress and other torts because the challenged

16  communications that induced settlement were privileged).  Finally, "[a]ny doubt as to whether

17  the privilege applies is resolved in favor of applying it."  *Zurich*, 96 Cal. App. 4th at 23.

18          Whether or not Wachovia's offer to sell the home contained illegal or oppressive terms,

19  as Plaintiffs allege, it is undisputed that it was made "in response to the complaint filed originally

20  in state court" and therefore was a settlement offer.  Because such an offer is "permitted by law

21  in the course of a judicial proceeding to achieve the objects of the litigation, even though [it is]

22  made outside the courtroom and no function of the court or its officers is involved," *Silberg*, 50

23  Cal. 3d at 212, it is absolutely privileged and not actionable.  An amendment of the pleadings

24  alleging the illegality of the offer thus would be futile.  Accordingly, the motion for leave to

25  amend will be denied.

26  **C.      Motion to remand unlawful detainer action**

27          **1.      Propriety of removal**

28          Plaintiffs appear to advance two theories of removal jurisdiction: first, that the unlawful

12

1    detainer action is subject to a "federal" affirmative defense in that Wachovia allegedly lacks valid

2    title to the subject property because of its alleged civil rights violations; and second, that the

3    relationship between the civil rights action and the unlawful detainer action gives rise to

4    supplemental or ancillary jurisdiction in this Court.  As explained below, Plaintiffs' arguments

5    lack merit because (1) there is no federal question on the face of Wachovia's unlawful detainer

6    complaint, and (2) ancillary or supplemental jurisdiction is not a source of original jurisdiction

7    and therefore may not serve as the basis for removal.[6]

8            First, as argued by Wachovia, there is no federal question on the face of Wachovia's

9    complaint.  Subject to narrow exceptions that are inapplicable here, that is the end of the inquiry

10   with respect to federal question jurisdiction.  *Wayne v. DHL Worldwide Express*, 294 F.3d 1179,

11   1183 (9th Cir. 2002); *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United*

12   *States*, 215 F.3d 1005, 1014 (9th Cir. 2000).  Conversely, it is axiomatic that a federal defense is

13   insufficient to support removal jurisdiction under the well-pleaded complaint rule.  *Wayne*, 294

14   F.3d at 1183.  Plaintiffs' discussion of title therefore has no bearing on the propriety of the

15   removal.[7]  Second, it is well-settled that "[t]he supplemental-jurisdiction statute is not a source of

16   original subject-matter jurisdiction, and a removal petition therefore may not base subject-matter

17   _____

18       [6] Although Plaintiffs do not argue that the Court has diversity jurisdiction over the
     unlawful detainer action, the Court notes that diversity clearly would not lie because Flower, the

19   defendant in that action, is a citizen of California, the forum state.  *See* 28 U.S.C. § 1441(b)
     ("Any civil action of which the district courts have original jurisdiction founded on a claim or

20   right arising under the Constitution, treaties or laws of the United States shall be removable
     without regard to the citizenship or residence of the parties.  *Any other such action shall be*

21   *removable only if none of the parties in interest properly joined and served as defendants is a*

22   *citizen of the State in which such action is brought*.").

23       [7] In any event, the allegations in the complaint do not appear to raise a question of
     whether Wachovia has proper title to the subject property for purposes of an unlawful detainer

24   action.  In such an action, Wachovia "need only prove a sale in compliance with the statute and

25   deed of trust, followed by purchase at such sale, and the defendant may raise objections only on
     *that phase of the issuance of title*." *Old National Financial Services, Inc. v. Seibert*, 194 Cal.

26   App. 3d 460, 465 (1987) (emphasis in original).  In the civil rights action, title does not appear to
     be in issue because Plaintiffs do not dispute that Wachovia acquired title to the subject property

27   at the trustee sale in accordance with the statute and deed of trust.  They claim only that

28   Wachovia engaged in unlawful discrimination on the basis of their familial relationship *after* the
     trustee sale.

                                                    13

1   jurisdiction on the supplemental jurisdiction statute, even if the action which a defendant seeks to

2   remove is related to another action over which the federal district court already has

3   subject-matter jurisdiction." *Pacific Bell v. Covad Communications Co.*, No. C 99-1491 SI, 1999

4   WL 390840, at *3 (N.D. Cal. June 8, 1999) (quoting *Ahearn v. Charter Twp. Of Bloomfield*, 100

5   F.3d 451, 456 (6th Cir. 1996)); *see also In re Estate of Tabas*, 879 F. Supp. 464, 467 (E.D. Pa.

6   1995); *Brown v. Prudential Insurance Company*, 954 F. Supp. 1582, 1584 (S.D. Ga. 1997);

7   *Sebring Homes Corp. v. T.R. Arnold & Assocs.*, 927 F. Supp. 1098, 1101 (N.D. Ind. 1995); *In re*

8   *Dow Corning Corp.*, 187 B.R. 934, 938 (E.D. Mich. 1995); *Zewe v. Law Firm of Adams &*

9   *Reese*, 852 F. Supp. 516, 520 (E.D. La. 1993); *Holt v. Lockheed Support Sys., Inc.*, 835 F.Supp.

10  325, 329 (W.D. La.1993).  As such, the relationship between the unlawful detainer action and the

11  civil rights action is immaterial for purposes of removal jurisdiction.  Because this Court lacks

12  removal jurisdiction over the unlawful detainer action, Wachovia's motion to remand will be

13  granted.

14          **2.      Costs and fees**

15          Wachovia seeks an order compelling Plaintiffs to reimburse it for attorneys' fees it

16  incurred in connection with the improper removal.  A court may award attorneys fees under §

17  1447(c) "where the removing party lacked an objectively reasonable basis for seeking removal."

18  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  As the Supreme Court noted in

19  *Martin*,

20          [t]he process of removing a case to federal court and then having it remanded
        back to state court delays resolution of the case, imposes additional costs on both
21      parties, and wastes judicial resources.  Assessing costs and fees on remand
        reduces the attractiveness of removal as a method for delaying litigation and
22      imposing costs on the plaintiff.  The appropriate test for awarding fees under §
        1447(c) should recognize the desire to deter removals sought for the purpose of
23      prolonging litigation and imposing costs on the opposing party. . .

24  *Id*. at 140.  In *Eden Housing Mgmt., Inc. v. Muhammad*, No. C 07-04325 SBA, 2007 WL

25  4219397 (N.D. Cal. Nov. 28, 2007), the court addressed an improper removal of an unlawful

26  detainer action.  The Court noted the absence of a federal question and the impropriety of

27  removing the action based on a purported federal defense or counterclaim.  *Id*. at *1-3.

28  Wachovia argues that in light of *Eden* and similar cases, Plaintiffs' removal of the unlawful

14

1   detainer action lacked an objectively reasonable basis.

2        In *Eden*, as in the other cases cited by Wachovia, the subject unlawful detainer action did

3   not bear any plausible relationship to a second action in which the breadth of issues arguably

4   exceeded the proper scope of an unlawful detainer proceeding. *See Eden Housing Mgmt., Inc. v.*

5   *Muhammad*, No. C 07-04325 SBA, 2007 WL 4219397 (N.D. Cal. Nov. 28, 2007); *HSBC Bank*

6   *USA v. Ramirez*, No. CV 08-05638-RGK, 2008 WL 4724055, at *2 (C.D. Cal. Oct. 21, 2008).

7   In the instant case, the two related actions might well have been appropriate for consolidation

8   pursuant to § 1048(a) of the California Code of Civil Procedure.  Wachovia's removal of the

9   civil rights action, while technically proper, precluded any recourse to California's consolidation

10  procedures.  Thereafter, the interplay of multiple federal procedural rules prevented federal

11  consolidation insofar as the unlawful detainer action was unremovable (1) for lack of a federal

12  question, (2) because Flower was a resident defendant in the action, precluding diversity

13  jurisdiction, and (3) because supplemental jurisdiction "does not allow a party to remove an

14  otherwise unremovable action to federal court for consolidation with a related federal action . . . .

15  [even though] such an approach would have the benefits of efficiency. . . . " *In re Estate of*

16  *Tabas*, 879 F. Supp. at 467.  While the Court takes issue with Plaintiffs' view of the merits, and

17  indeed has some suspicion that the removal of the unlawful detainer action may have been

18  motivated at least in part by a desire to postpone Flower's eviction for as long as possible, at least

19  some of the relevant equities tip in Plaintiffs' favor.  Accordingly, the motion for fees and costs

20  will be denied.

21                              **IV. CONCLUSION**

22        For the foregoing reasons, Plaintiffs' motion to remand the civil rights action will be

23  denied and Wachovia's motion to dismiss that action will be granted without leave to amend.

24  Wachovia's motion to remand the unlawful detainer action will be granted.  The clerk shall close

25  the file.

26

27  **IT IS SO ORDERED**

28

15

1    DATED: 4/10/09

2                                    _____
                                     JEREMY FOGEL
3                                    United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-343 JF (HRL)
ORDER GRANTING MOTION TO REMAND, ETC.
(JFLC3)

1 This Order has been served electronically upon the following persons:

2 Keith David Yandell kyandell@reedsmith.com, dkelley@reedsmith.com

3 Theodore Tyler Ting tting@reedsmith.com, kellis@reedsmith.com

4 William Blackford Look , Jr look_mtr@sbcglobal.net, look_crml@montereybay.com

5 This Order has been served by other means upon the following persons:

6 William B. Look , Jr
P.O. Box 1381
7 Monterey, CA 93942

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17